346 So.2d 1049 (1977)
GENERAL ELECTRIC CREDIT CORPORATION OF GEORGIA, a Georgia Corporation, Appellant,
v.
METROPOLITAN DADE COUNTY, and South Florida Regional Planning Council, Appellees.
No. 76-1180.
District Court of Appeal of Florida, Third District.
May 31, 1977.
*1050 Turner, Hendrick, Guilford, Goldstein & McDonald and S. Alan Stanley, Coral Gables, for appellant.
*1051 Stuart Simon, County Atty., and Stanley B. Price, Asst. County Atty., Milledge & Hermelee, and Allan Milledge, Miami, for appellees.
Before HENDRY, C.J., and BARKDULL and NATHAN, JJ.
NATHAN, Judge.
General Electric Credit Corporation of Georgia (GECC) appeals from an order dismissing a petition for writ of certiorari for failure to exhaust administrative remedies. The petitioners sought to review the denial by the Dade County Board of County Commissioners of an application for zoning changes and development approval on a tract of land known as Kendale Gables. The petition was filed in the Circuit Court of Dade County by GECC and Intercontinental Group, Inc. However, this appeal is taken solely by GECC, since the latter corporation is now the fee title holder of the subject property by virtue of a foreclosure of its first mortgage against Intercontinental, the former owner.
On April 12, 1974, Intercontinental filed an application with Metropolitan Dade County for changes in zoning on the 610 acre Kendale Gables tract. Intercontinental proposed to construct 3,940 dwelling units on the property. A development of this size is presumed to be a "development of regional impact,"[1] and is subject to the requirements of Chapter 380, Florida Statutes, The Florida Land and Water Management Act of 1972. Under the provisions of Chapter 380, a developer may only undertake development of regional impact where the local government has adopted a zoning ordinance after due consideration of the recommendations of certain regional planning agencies:[2]
"(11) ... in considering whether the development shall be approved, denied, or approved subject to conditions, restrictions, or limitations, the local government shall consider whether, and the extent in which:
* * * * * *
(c) The development is consistent with the report and recommendations of the regional planning agency submitted pursuant to subsection (8) of this section."
Section 380.06(11), Florida Statutes (1975).
Accordingly, the rezoning application was submitted to the South Florida Regional Planning Council, the designated regional planning agency for this portion of the state, for a report concerning the regional impact of the proposed development.
On August 8, 1974, the Council recommended that the application for development be denied, citing adverse regional impacts upon drainage, transportation, schools, low and moderate income housing and master plan implementation.[3]
Intercontinental thereafter revised its plan for the development of Kendale Gables. The principal feature of the new plan was a 15% reduction in the number of dwelling units. The revised proposal was never submitted to the Regional Planning Council.
*1052 A public hearing was held on the rezoning application in April of 1975, at which time the Executive Director of the Regional Planning Council observed that the revised development plan had apparently corrected some of the defects which were inherent in the original proposal. However, he then stated that the changes in the proposed development required resubmission of the project to the Council for consideration in light of the modifications and, in fact, Intercontinental's representative at the public hearings acknowledged that the revised plan would have to be submitted to the Council for its review and recommendations.
The application for rezoning was denied, whereupon a petition for writ of certiorari was filed in the Dade County Circuit Court. The petition was filed in the names of both Intercontinental, as the owner of the property, and GECC, as the holder of a first mortgage lien on the property, GECC was admitted as a party through a stipulation with Dade County to the effect that GECC was a proper party due to its substantial interest in the Kendale Gables tract. Appellee South Florida Regional Planning Council was granted leave to intervene as a party respondent.
After hearing oral argument and considering briefs submitted by all concerned parties, the Circuit Court judge dismissed the petition for writ of certiorari. In a comprehensive order, the judge noted that the County Commission's denial of zoning changes and development permits constituted a "development order" as defined in Section 380.031(2),[4] Florida Statutes, and that the petitioners were therefore required to appeal the denial to the Florida Land and Water Adjudicatory Commission, which was expressly establish for the purpose of hearing appeals from development orders.[5] Since no such appeal had been taken, the court held that the petition should be dismissed for failure to exhaust administrative remedies.
As a second reason for the dismissal, the court cited Intercontinental's failure to submit its revised development proposal to the Regional Planning Council for its recommendations. The court found that the new plan represented a "substantial modification" of Intercontinental's development proposal, and that additional review by the Regional Planning Council was therefore mandated by Chapter 380.
Appellant GECC herein maintains that it was not subject to the requirements of Chapter 380 inasmuch as it was not the "developer" of the Kendale Gables project. Appellant argues that it was not in a position to submit the revised development proposal to the Regional Planning Council for consideration and that it had no standing to pursue an appeal before the Florida Land and Water Adjudicatory Commission.
In responding to this argument, we initially note that GECC and Intercontinental are indeed separate corporate entities and, further, that it appears from the record that Intercontinental alone sought approval of the Kendale Gables development. Thus, up until the time when GECC joined as a party in petitioning for a writ of certiorari, it could not be characterized as a "developer" within the meaning of Chapter 380.[6] However, at that point any and all legally cognizable distinctions between *1053 these two parties became obscure, for it is clear that GECC is now seeking exactly what was sought by Intercontinental  approval of the Kendale Lakes development proposal. We cannot now allow GECC to avoid those requirements of Chapter 380 which governed the actions of its predecessor in interest, Intercontinental. As was aptly stated in the order of dismissal:
"GECC seeks in this action the same development approvals which Intercontinental Group, Inc. sought from the Metropolitan Dade County Commission, i.e., zoning and other approvals to undertake a development of regional impact. It seems plain that GECC can have no greater standing to obtain development approvals for the proposed project than the owner, and must stand in the owner's shoes where they seek the identical result. Anything less would create chaos, as holders of lesser interests could claim the ability to avoid the procedures which are required by those having the fee or most substantial interest in the property."
In particular, with regard to the submission of the revised proposal to the Regional Planning Council for evaluation, we find no merit in appellant's argument that it would have been illogical to require resubmission of the development application where the original proposal had been rejected at a higher unit density. It may well be that many of the defects of the initial plan were corrected by the revised proposal, but we will not take it upon ourselves to make such a determination where the proper administrative agencies have been denied a similar opportunity. This is the very essence of the doctrine of exhaustion of administrative remedies. Cf. De Carlo v. Town of West Miami, 49 So.2d 596 (Fla. 1951).
We therefore hold that Intercontinental should have submitted its revised development plan to the Regional Planning Council for approval. This holding is binding upon the appellant herein, for GECC has effectively stepped into Intercontinental's shoes, and must bear the burden of the latter corporation's failure to follow statutorily mandated procedures.
We also hold that this cause was properly dismissed because no appeal from the adverse development order was brought before the Florida Land and Water Adjudicatory Commission. Section 380.07, Florida Statutes (1975), outlines the procedure for such appeals. In pertinent part, it reads as follows:
(1) There is hereby created the Florida Land and Water Adjudicatory Commission, which shall consist of the Administration Commission.
(2) Whenever any local government issues any development order ... in regard to any development of regional impact, a copy of such order shall be transmitted to the state land planning agency and the owner or developer of the property affected by such order. Within 30 days after the order is rendered, either the owner, developer, an appropriate regional planning agency, or the state land planning agency may appeal the order to the Florida Land and Water Adjudicatory Commission... . The filing of the notice of appeal shall stay the effectiveness of the order, and shall stay any judicial proceedings in relation to the development order, until after the completion of the appeal process."
Full notice and hearing are required by the section. In addition, a hearing officer is provided for with the power to subpoena witnesses and evidence. The Adjudicatory Commission must issue a decision within 120 days, which decision is subject to judicial review under Chapter 120, Florida Statutes.
Appellant contends that appeals to the Commission are not mandatory, since Section 380.07(2) merely says "may" appeal, rather than "shall" appeal, and is therefore permissive in nature. This argument misconstrues the doctrine of exhaustion of administrative remedies, which is based on the mere availability of administrative review procedures. In Florida Welding & Erection Service, Inc. v. American Mutual Insurance Co., 285 So.2d 386 (Fla. 1973), the Supreme *1054 Court of Florida held that a summary judgment had been properly granted for failure to exhaust administrative remedies where a method of appeal to an administrative department was available. The statute involved in that case used the same kind of permissive language found in Section 380.07.
Were we to hold that appeals to the Land and Water Adjudicatory Commission are simply options to be utilized or ignored according to the whim of individual owners or developers, we would frustrate the obvious intent of the Legislature, which was to allow the fullest possible input by regional and state authorities into areas of development which will have extra-local impact. See Section 380.021, Florida Statutes (1975).
Appellant further asserts that even if the review procedures of Section 380.07 are mandatory, it had no standing to pursue such a remedy, since it was not a party to either the rezoning application which was heard by the County Commission or the application for a development of regional impact which was considered by the Regional Planning Council. To support this contention, appellant has mistakenly relied upon Sarasota County v. Beker Phosphate Corp., 322 So.2d 655 (Fla. 1st DCA 1975), and Sarasota County v. General Development Corp., 325 So.2d 45 (Fla. 2d DCA 1976). In both cases, Sarasota County sought to directly appeal development orders to the Adjudicatory Commission without having the kind of interest prescribed by Section 380.07(2) as a condition precedent to appeal. In the earlier case, the First District Court of Appeal observed that the specific enumeration of those parties who are entitled to appeal development orders was designed "to avoid administrative and judicial delay of the resolution of the landowner's right to lawfully utilize his property." 322 So.2d at 658, n. 11. However, in the case before us the landowner chose to ignore the designated method of review. There is no question that Intercontinental could properly have appealed to the Land and Water Adjudicatory Commission as both the owner and developer of Kendale Gables. Given the identity of purpose between Intercontinental and GECC in petitioning for certiorari, GECC must now be bound by Intercontinental's failure to pursue administrative review.
Appellant's final contention is that certiorari to the Circuit Court of Dade County is the sole method for reviewing zoning decisions of the Metropolitan Dade County Board of County Commissioners. While appellate cites numerous cases which have in fact so held,[7] none of these cases involved developments of regional impact. Ordinarily, certiorari is the only means of reviewing a zoning decision by Dade County. However, where a development of regional impact is involved, the provisions of Chapter 380 are applicable, and review must be had in accordance with the dictates of that law. Thus, when a development order as defined in Section 380.031(2) is rendered by the Dade County Commissioners, any appeals must be taken to the Florida Land and Water Adjudicatory Commission.
Chapter 380 is a general law which is equally at force throughout the state. As such, it prevails over the zoning review procedures of Section 33-316 of the Code of Metropolitan Dade County to the extent that the two conflict. Article VIII, Section 1(g), and Article XI, Section 5, Florida Constitution. See Board of County Commissioners of Dade County v. Boswell, 167 So.2d 866 (Fla. 1964). Therefore, to the extent that Section 380.07, Florida Statutes, provides what we have determined to the uniform statewide procedure for reviewing development orders, it prevails over the zoning review procedures contained within the Dade County Code.
*1055 This holding comports with the clearly evinced legislative policy of Chapter 380 which, as noted earlier, was intended to ensure the participation of regional and statewide land planning agencies in decisions which will affect substantial portions of the state. The circuit court properly refrained from "plowing in advance" ground that "should first be plowed" by the Regional Planning Council and then, if necessary, by the Florida Land and Water Adjudicatory Commission.[8] We therefore find that appellant's petition for writ of certiorari was properly dismissed for failure to exhaust administrative remedies.
Affirmed.
NOTES
[1] § 380.06, Fla. Stat. (1975), defines "developments of regional impact" as follows:

"(1) `Development of regional impact,' as used in this section, means any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of more than one county."
§ 380.06(2) required the Administration Commission to adopt guidelines and standards "to be used in determining whether particular developments shall be presumed to be of regional impact." These standards are codified in Fla. Admin. Code § 22F-2.10, which in pertinent part states:
"(1) The following developments shall be presumed to be developments of regional impact and subject to the requirements of Chapter 380, Florida Statutes:
Any proposed residential development that is planned to create or accommodate more than the following number of dwelling units:
* * * * * *
(f) In counties with a population in excess of 500,000  3,000 dwelling units."
[2] § 380.06(5), Fla. Stat. (1975).
[3] The Council's Impact Assessment for the Kendale Lakes project clearly displays that full consideration was given to the criteria for evaluation set forth in § 380.06(8), Fla. Stat. (1975), as well as to other areas of concern not specifically mentioned in the statute.
[4] § 380.031(2) defines a development order as "any order granting, denying, or granting with conditions an application for a development permit." A development permit includes "any building permit, zoning permit, plat approval, or rezoning, certification, variance, or other action having the effect of permitting development as defined in this chapter," § 380.031(3), Fla. Stat. (1975). Development is specifically defined in § 380.04(2)(b) as including "[a] change in the intensity of use of land, such as an increase in the number of dwelling units in a structure or on land... ."
[5] § 380.07, Fla. Stat. (1975). See textual discussion infra.
[6] § 380.031(4) defines a developer as "any person ... undertaking any development as defined in [Chapter 380]." Development is defined as including "any material change in the use or appearance of any structure or land," § 380.04(1), as well as "[a] change in the intensity of use of land, such as an increase in the number of dwelling units... ." § 380.04(2)(b), Fla. Stat. (1975).
[7] Centex Homes Corp. v. Metropolitan Dade County, 318 So.2d 149 (Fla. 3d DCA 1975); Baker v. Metropolitan Dade County, 237 So.2d 201 (Fla. 3d DCA 1970); Metropolitan Dade County v. Greenlee, 213 So.2d 485 (Fla. 3d DCA 1968); Land Corporation of Florida v. Metropolitan Dade County, 204 So.2d 222 (Fla. 3d DCA 1967), cert. denied, 210 So.2d 224 (Fla. 1968); Dade County v. Carmichael, 165 So.2d 227 (Fla. 3d DCA 1964).
[8] Odham v. Foremost Dairies, Inc., 128 So.2d 586, 593 (Fla. 1961).