402 So.2d 1251 (1981)
MANATEE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
ESTECH GENERAL CHEMICALS CORPORATION, Formerly Swift Agricultural Chemicals Corporation, and Governor and Cabinet of the State of Florida, Sitting As the Florida Land and Water Adjudicatory Commission, Appellees.
SARASOTA COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
ESTECH GENERAL CHEMICALS CORPORATION, Formerly Swift Agricultural Chemicals Corporation, and Governor and Cabinet of the State of Florida, Sitting As the Florida Land and Water Adjudicatory Commission, Appellees.
Nos. 80-2003, 80-2015.
District Court of Appeal of Florida, Second District.
August 5, 1981.
Rehearing Denied September 8, 1981.
E.N. Fay, Jr. of Mann & Fay, Chartered, Bradenton, and William L. Earl of Peeples, Earl, Smith, Moore & Blank, Miami, for appellant Manatee County.
*1252 Richard E. Nelson and Richard L. Smith of Nelson, Hesse, Cyril, Weber, Smith & Widman, Sarasota, for appellant Sarasota County.
Wade L. Hopping, Gary P. Sams and Richard D. Melson of Hopping, Boyd, Green & Sams, Tallahassee, for appellee Estech General Chemicals Corp.
Jim Smith, Atty. Gen., Nancy G. Linnan, Asst. Deputy Atty. Gen. and Charles A. Stampelos, Asst. Atty. Gen., Tallahassee, for appellees the Governor and Cabinet of the State of Florida, sitting as the Florida Land and Water Adjudicatory Commission.
Judith S. Kavanaugh, Bradenton, for amicus curiae Hardee County.
GRIMES, Judge.
This case involves the important issue of the proper method for review of a decision of a county zoning authority which concerns a development of regional impact.
Estech General Chemicals Corporation owns a 10,000 acre tract of land in eastern Manatee County within the watershed of the Manatee River. This watershed drains into Lake Manatee which is the primary source of drinking water for all of the urbanized area of Manatee County and for a substantial portion of the northern part of Sarasota County. In May 1978, Estech filed applications pursuant to the Manatee County zoning ordinance for a special use exception for a phosphate mining project on the tract of land and for approval of a master mining and reclamation plan. It also filed an application for approval of a development of regional impact (DRI) pursuant to chapter 380, Florida Statutes (1979). The Manatee Board of County Commissioners and the Manatee County Planning Commission held a joint hearing to consider the applications. Estech appeared as petitioner, and Sarasota County and others appeared as respondents.
Subsequently, the Planning Commission recommended that Manatee County approve the three applications with certain specified conditions. However, the Board of County Commissioners chose not to follow the Planning Commission's recommendations and adopted a resolution denying the applications. In so doing, it found that the proposed use of the property was not reasonably compatible with surrounding uses, that nuisances or hazardous features were involved, and that the nuisances or hazardous features were not suitably separated from adjacent uses. In particular, it objected to a large waste clay settling area known as a slime pond which, it feared, might leak into the Manatee River and Lake Manatee.
Estech appealed Manatee County's decision to the Florida Land and Water Adjudicatory Commission. The Commission then assigned the matter to the Division of Administrative Hearings where Estech requested a hearing based on the record made at the county level. Sarasota County, on the other hand, moved for a de novo hearing including the introduction of new evidence, and Manatee County adopted this motion. Over Estech's objection, the hearing officer ordered a de novo hearing, but the parties stipulated to the admission of all evidence from the earlier proceedings.
After a two week hearing and the submission of proposed findings of fact, the hearing officer entered a recommended order suggesting the approval of Estech's applications for development, subject to certain specified conditions. The governor and cabinet, sitting as the Land and Water Adjudicatory Commission, considered the recommended order and the parties' exceptions, and, after arguments of counsel and other presentations, entered a final order adopting the recommended order with certain amendments and modifications, including the requirement that Estech maintain a sand-clay mix in its slime pond at an additional expense of seven million dollars in order to reduce the harm which would result from a dam break. Following the entry of the Commission's order, Manatee County and Sarasota County filed petitions for review in this court. We have jurisdiction pursuant to section 120.68, Florida Statutes (1979).
*1253 Manatee and Sarasota readily concede that pursuant to chapter 380, the Land and Water Adjudicatory Commission had the power to review that part of Manatee's decision concerning the application for a DRI. However, they contend that the Commission did not have jurisdiction to overrule their denial of the applications for a special exception and for approval of a master mining plan under the Manatee County zoning ordinance because these were local zoning matters which local authorities and not state authorities should handle. Thus, they suggest that the issue of this case is whether the authority to make local zoning decisions will continue to rest with counties and municipalities or will be vested in the state government. We cannot agree that the issue here is quite such an apocalyptic one. As Manatee and Sarasota concede, local zoning decisions have always been subject to review by certiorari in the circuit court. Accordingly, we view the issue merely as being whether the legislature in enacting chapter 380 shifted the review of local zoning decisions which concern developments of regional impact from the circuit court to the Land and Water Adjudicatory Commission. After a careful consideration of the relevant authorities, we have decided that indeed the legislature has changed the review process for local zoning decisions in cases involving developments of regional impact.
We think that a fair reading of chapter 380 leads undeniably to the conclusion we have reached. The relevant portions of that chapter are as follows:
380.031 Definitions.  As used in this chapter:
... .
(2) "Development order" means any order granting, denying, or granting with conditions an application for a development permit.
(3) A "development permit" includes any building permit, zoning permit, plat approval, or rezoning, certification, variance, or other action having the effect of permitting development as defined in this chapter.
380.06 Developments of regional impact. 
(1) "Development of regional impact," as used in this section, means any development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county.
... .
(6) If the development of regional impact is to be located within the jurisdiction of a local government that has adopted a zoning ordinance, the developer shall file an application for development approval with the appropriate local government having jurisdiction. The application shall contain, in addition to such other matters as may be required, a statement that the developer proposes to undertake a development of regional impact as defined under this section.
(7) The appropriate local government shall give notice and hold a hearing on the application in the same manner as for a rezoning as provided under the appropriate special or local law or ordinance and shall comply with the following additional requirements:
... .
(e) The appropriate local government shall render a decision on the application within 30 days after the hearing, unless an extension is requested by the developer. The development order shall include findings of fact and conclusions of law consistent with subsection (11).
380.07 Florida Land and Water Adjudicatory Commission. 
(1) There is hereby created the Florida Land and Water Adjudicatory Commission, which shall consist of the Administration Commission.
(2) Whenever any local government issues any development order in any area of critical state concern, or in regard to any development of regional impact, copies of such orders as prescribed by rule by the state land planning agency shall be transmitted to the state land planning agency, the regional planning agency, *1254 and the owner or developer of the property affected by such order. Within 45 days after the order is rendered, the owner, the developer, an appropriate regional planning agency by vote at a regularly scheduled meeting, or the state land planning agency may appeal the order to the Florida Land and Water Adjudicatory Commission by filing a notice of appeal with the commission. The appellant shall furnish a copy of the notice of appeal to the opposing party, as the case may be, and to the local government which issued the order. The filing of the notice of appeal shall stay the effectiveness of the order and shall stay any judicial proceedings in relation to the development order, until after the completion of the appeal process.
(3) Prior to issuing an order, the Florida Land and Water Adjudicatory Commission shall hold a hearing pursuant to the provisions of chapter 120. The commission shall encourage the submission of appeals on the record made below in cases in which the development order was issued after a full and complete hearing before the local government or an agency thereof.
(4) The Florida Land and Water Adjudicatory Commission shall issue a decision granting or denying permission to develop pursuant to the standards of this chapter and may attach conditions and restrictions to its decisions.
By following these sections, it becomes clear that the correct procedures for a developer to use when he is involved with a development of regional impact are exactly those which Estech used in the present case. The developer first files an application for a development permit with the local zoning authorities. § 380.06(6). This application must not only request approval for DRI status but must also ask for approval under all applicable local zoning laws because the definition of a development permit includes all requests for zoning approval. § 380.031(3). The local government then considers the applications using the required process and issues a development order which, since it is based on an application for a development permit, must deal not only with the DRI request but also with all local zoning matters. Finally, section 380.07 gives an aggrieved party the right to appeal the development order to the Florida Land and Water Adjudicatory Commission. Again, since local zoning decisions are part of the development order, it is only reasonable to assert that the Land and Water Adjudicatory Commission is to review the local zoning decisions as well as the decision relating to the DRI. This avoids the prospect of the review of interrelated aspects of the same order proceeding concurrently in two forums.
The only prior decision which directly deals with the situation before us supports this interpretation. In General Electric Credit Corp. v. Metropolitan Dade County, 346 So.2d 1049 (Fla. 3d DCA 1977), the Third District Court of Appeal reviewed a case in which a developer proposed to construct a housing development that qualified as a DRI. The developer filed an application with Metropolitan Dade County for changes in the county's zoning as well as for DRI approval. When Dade County denied the applications, the developer sought a writ of certiorari in the circuit court. The circuit court dismissed the petition for failure to exhaust administrative remedies. The developer then appealed to the district court which affirmed the circuit court's ruling and found that the developer had indeed failed to exhaust its administrative remedies, in part because it had failed to appeal Dade County's decision to the Land and Water Adjudicatory Commission. The court said:
Appellant's final contention is that certiorari to the Circuit Court of Dade County is the sole method for reviewing zoning decisions of the Metropolitan Dade County Board of County Commissioners. While appellate (sic) cites numerous cases which have in fact so held, none of these cases involved developments of regional impact. Ordinarily, certiorari is the only means of reviewing a zoning decision by Dade County. However, where a development of regional impact is involved, *1255 the provisions of Chapter 380 are applicable, and review must be had in accordance with the dictates of that law. Thus, when a development order as defined in Section 380.031(2) is rendered by the Dade County Commissioners, any appeals must be taken to the Florida Land and Water Adjudicatory Commission.
Chapter 380 is a general law which is equally at force throughout the state. As such, it prevails over the zoning review procedures of Section 33-316 of the Code of Metropolitan Dade County to the extent that the two conflict. Article VIII, Section 1(g), and Article XI, Section 5, Florida Constitution. See Board of County Commissioners of Dade County v. Boswell, 167 So.2d 866 (Fla. 1964). Therefore, to the extent that Section 380.07, Florida Statutes, provides what we have determined to the (sic) uniform statewide procedure for reviewing development orders, it prevails over the zoning review procedures contained within the Dade County Code.
This holding comports with the clearly evinced legislative policy of Chapter 380 which, as noted earlier, was intended to ensure the participation of regional and statewide land planning agencies in decisions which will affect substantial portions of the state.
346 So.2d at 1054-55 (footnote omitted).
Professor Thomas Pelham reaches the same conclusion in his book, State Land-Use Planning and Regulation; Florida, the Model Code and Beyond (1979), where he states:
[Chapter 380] expressly provides that "any development order ... in regard to any development of regional impact" may be appealed to the Adjudicatory Commission. Fla. Stat. § 380.07(2) (1977) (emphasis added). For purposes of the act, development order is defined as "any order granting, denying or granting with conditions an application for a development permit." Id. § 380.031(2) (emphasis added). Development permit, in turn is defined to include "any building permit, zoning permit, plat approval, or rezoning, certification, variance or other action having the effect of permitting development as defined in this chapter." Id. § 380.031(3) (emphasis added). Hence, statutory conferral of jurisdiction over zoning and other orders relating to DRI is clear.
Id. at 53.
Amicus curiae, Hardee County, makes another argument which we should also address. It points out that the legislature based chapter 380 in great part on the Model Land Development Code prepared by the American Law Institute. However, amicus suggests that the legislature made some changes in the model code which show that it was not the intent of the legislature to create the result we have reached here. Amicus contends that a careful examination of the provisions of the model code and of chapter 380 demonstrates that the DRI process enacted by the legislature does not allow state or regional interests to override local controls as does the model code but rather only creates a process whereby local governments consider extra-local issues when making local decisions regarding certain types of development. From this, amicus reasons that the legislature did not intend for the state to take over local zoning decisions under the name of the DRI process.
In response to this argument, we repeat what we said earlier. Chapter 380, in providing for review of local zoning decisions in the DRI process, does not remove local land use decisions from the control of local governing bodies. It simply shifts the review of those decisions from the circuit court to the Land and Water Adjudicatory Commission. Because a development of regional impact substantially affects more than one county, the Adjudicatory Commission will review decisions with regional interests in mind. As Professor Pelham states:
According to its sponsors and supporters, an avowed purpose of the program is to prevent local governments from prohibiting development of benefit to the region or state solely on the basis of local considerations. *1256 This purpose can never be achieved if local zoning decisions are not reviewable by the Adjudicatory Commission. By simply denying a necessary rezoning, local government could prevent regionally beneficial development regardless of the outcome of appeal of its DRI development order to the Adjudicatory Commission. Consequently, state jurisdiction of local zoning orders relating to DRI is essential to the effectuation of the regional goals of [Chapter 380].

Id. at 54 (footnote omitted). Of course, this does not mean that the Adjudicatory Commission can arbitrarily ignore local zoning laws or decisions, and its orders are always subject to review by the district courts of appeal. Thus, while we appreciate the fact that there are indeed differences between the Model Land Development Code and chapter 380, we cannot see that it leads to the conclusion that the legislature could not have meant to shift the review of the local decisions.
There is one final point to discuss. Manatee and Sarasota argue that even if the Land and Water Adjudicatory Commission had jurisdiction to review Manatee County's decision, its order is still subject to reversal because it failed to use the proper standard in reviewing that ruling. They contend that the Commission should have affirmed Manatee County's decision as being "fairly debatable." Although we have serious doubts about this argument, we need not consider it because Manatee and Sarasota requested and received a de novo hearing before the hearing officer under section 380.07(3) and, thus, waived the right to depend upon any presumption of validity which might otherwise have attached to the Manatee County order. There was ample evidence received by the hearing officer to support the Commission's decision, so it must be
AFFIRMED.
HOBSON, A.C.J., and BOARDMAN, J., concur.