The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 31, 2024

## 2024COA118

**No. 23CA0486, *People v. Abdul-Rahman* — Criminal Law — Parole — Revocation Proceedings — State Board of Parole — Appeals to Appellate Body of the Board — Judicial Review**

A division of the court of appeals considers whether a parolee must pursue an administrative appeal of a parole revocation decision with the State Board of Parole before seeking judicial review of the lawfulness of the decision.  The division concludes that the applicable statutes do not require an administrative appeal to precede judicial review of a parole revocation decision.

Accordingly, the division addresses the merits of the defendant's appeal.  In doing so, the division affirms the district court's order denying the defendant's Crim. P. 35(c) motion.

COLORADO COURT OF APPEALS $\qquad$ **2024COA118**

Court of Appeals No. 23CA0486
Boulder County District Court No. 09CR2035
Honorable Ingrid S. Bakke, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Shams Abdul-Rahman,

Defendant-Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE GROVE
Fox, J., concurs
Sullivan, J., dissents

Announced October 31, 2024

Philip J. Weiser, Attorney General, Abigail M. Armstrong, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Jeffrey C. Parsons, Alternate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

¶ 1     Defendant, Shams Abdul-Rahman, appeals the postconviction court's order denying his Crim. P. 35(c) motion alleging that his parole was unlawfully revoked.  In resolving this appeal, we answer the novel question of whether a parolee must pursue an administrative appeal of a parole revocation decision with the State Board of Parole (Board) before seeking judicial review of the lawfulness of the decision.

¶ 2     Upon review of the applicable statutes, we conclude that they do not require an administrative appeal to precede judicial review of a parole revocation decision.  Accordingly, we address the merits of Abdul-Rahman's appeal and affirm the court's order denying his Crim. P. 35(c) motion.

## I.     Background

¶ 3     In 2011, a jury convicted Abdul-Rahman of sexual assault.  In accordance with the Sex Offender Lifetime Supervision Act, the trial court imposed an indeterminate sentence of twenty years to life on sex offender intensive supervision probation.  *See* § 18-1.3-1003(4), (5)(a)(I)(A), C.R.S. 2024; § 18-1.3-1004(2)(a), C.R.S. 2024.  Subsequently, the court found that Abdul-Rahman violated certain conditions of his probation, revoked the probationary sentence, and

1

resentenced him to four years to life in prison.  *See* § 18-1.3-1004(1)(a); § 18-1.3-1010(2)(a), C.R.S. 2024.  A division of this court affirmed the trial court's order revoking Abdul-Rahman's probation and resentencing him to prison.  *People v. Abdul-Rahman*, (Colo. App. No. 13CA0536, Apr. 2, 2015) (not published pursuant to C.A.R. 35(f)).

¶ 4     In 2014, the postconviction court denied Abdul-Rahman's first Crim. P. 35(c) motion.  A division of this court affirmed the order in part, reversed it in part, and remanded the case for an evidentiary hearing on two of Abdul-Rahman's claims.  *People v. Abdul-Rahman*, (Colo. App. No. 16CA0743, Nov. 16, 2017) (not published pursuant to C.A.R. 35(e)).  After a hearing, the postconviction court denied the remanded claims, and a division of this court affirmed the order.  *People v. Abdul-Rahman*, (Colo. App. No. 18CA1846, Sept. 26, 2019) (not published pursuant to C.A.R. 35(e)).

¶ 5     At some point, Abdul-Rahman was released on parole.  *See* § 17-22.5-403(7)(b), C.R.S. 2024; § 18-1.3-1006(1)(a), C.R.S. 2024.  In December 2019, he was arrested and charged with third degree assault (as we discuss below, that case was subsequently dismissed).  Around the same time, Abdul-Rahman was

2

unsuccessfully terminated from his sex offender treatment program. In the termination letter, the treatment provider explained that Abdul-Rahman "ha[d] made on and off progress in treatment" and "ha[d] a history of lying to his [therapist] and withholding details around his life outside of treatment." An updated Sex Offender Treatment Intervention and Progress Scale assessment determined that Abdul-Rahman was a high risk to reoffend. The treatment provider concluded that, "[g]iven Mr. Abdul-Rahman['s] unsuccessful engagement in treatment and disrespectful and aggressive behavior towards his wife and lying to his [therapist], he may not be amenable to treatment" and was "a risk to the community's safety." The provider was not willing to accept Abdul-Rahman for future treatment.

¶ 6    Abdul-Rahman's parole officer filed a revocation complaint, alleging that Abdul-Rahman had committed three violations of the terms and conditions of his parole: (1) he committed a criminal offense; (2) he was unsuccessfully terminated from treatment; and (3) he had an undisclosed adult relationship with a person identified as "Ness." At a January 2020 hearing, the Board found

that Abdul-Rahman had violated the conditions of his parole and revoked it.

¶ 7 In November 2020, Abdul-Rahman filed a motion under Crim. P. 35(c)(2)(VII) arguing, as relevant here, that his parole had been unlawfully revoked because he did not have the opportunity to present evidence and witnesses at the parole violation hearing and was not permitted to cross-examine his parole officer.

¶ 8 The postconviction court summarily denied the motion, finding that, "even if what [Abdul-Rahman] sa[id] [wa]s true, he d[id] not show how the proposed witness testimony would have changed the outcome of the parole hearing" and that "[t]here [wa]s insufficient information available for the [c]ourt to reasonably conclude that presenting additional witnesses would have made a difference in the outcome." The court also found that Abdul-Rahman was afforded the opportunity to cross-examine his parole officer and that his claim was based on the parole officer's failure to substantively respond to certain questions posed on cross-examination.

¶ 9 Abdul-Rahman now appeals the postconviction court's order affirming the revocation of his parole.

4

## II. Availability of Judicial Review

¶ 10    As a threshold matter, the People argue that this appeal is not properly before us because Abdul-Rahman was statutorily required to pursue an administrative appeal of the parole revocation decision with the Board before initiating judicial review of the decision. We are not persuaded.

### A. Parole Revocation Legal Authority

¶ 11    The Board is an administrative entity located within Colorado's Executive Branch. *See* § 17-2-201(1)(a), C.R.S. 2024; *State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 968 (Colo. 1997); *In re Question Concerning State Jud. Rev. of Parole Denial*, 610 P.2d 1340, 1341 (Colo. 1980); *see also* § 24-1-105(1)(b), C.R.S. 2024. Among other things, the Board is responsible for holding hearings on parole revocation complaints. *See* § 17-2-103(2)(b), (3)(a), C.R.S. 2024; § 17-2-201(4)(b), (7), (9)(b); § 17-22.5-403(8)(b); *see also* § 18-1.3-1010(1)(a) ("A sex offender paroled pursuant to section 18-1.3-1006 is subject to arrest and revocation of parole as provided in section[] 17-2-103 . . . ."). Section 17-2-201(4)(b) explicitly exempts such hearings from the requirements set forth in section 24-4-105, C.R.S. 2024, which outlines the procedures for "Hearings and

determinations" under the State Administrative Procedure Act.  *See generally* §§ 24-4-101 to -109, C.R.S. 2024.

¶ 12     The statutory procedures for addressing a parole revocation complaint are as follows.  A parolee is entitled to a hearing, and "one member of the [B]oard shall hear the case to a conclusion." § 17-2-103(2)(b).  Upon a determination that a sex offender[1] parolee violated a parole condition, the Board "shall continue the parole in effect, modify the conditions of parole . . . or revoke the parole and order the return of the sex offender to a place of confinement . . . for any period of time up to the remainder of the sex offender's natural life."  § 17-22.5-403(8)(b).

¶ 13     Once a decision to revoke parole is made, however, the applicable statutes appear to conflict as to the parolee's avenue of review.

¶ 14     Section 17-2-103(2)(b) states that, after the parole revocation case is heard to a conclusion by one Board member, "[t]he parolee

---

[1] The term "sex offender" is defined by section 18-1.3-1003(4) C.R.S. 2024.  Sex offenders are subject to mandatory indeterminate sentencing for a minimum period that varies by the type of sex offense committed and a mandatory maximum of the remainder of the offender's natural life.  § 18-1.3-1004, C.R.S. 2024.

may appeal to two members of the [B]oard." *See* § 17-2-201(9)(c). This two-member panel, which excludes the Board member who conducted the revocation hearing, *see id.*, has been referred to as the appellate body of the Board (Appellate Body). *See People v. Back*, 2013 COA 114, ¶ 13. Section 17-2-201(9)(c) states that, "[i]f the parolee decides to appeal the decision to revoke his parole, such appeal shall be filed within thirty days of such decision."

¶ 15 However, section 17-2-201(4)(b), which empowers the Board to conduct parole revocation hearings, states, without reference to the Appellate Body, that "[j]udicial review of any revocation of parole shall be held pursuant to section 18-1-410(1)(h), C.R.S. [2024]." Section 18-1-410(1)(h) permits every person convicted of a crime to apply for postconviction relief on the basis "that there has been unlawful revocation of parole, probation, or conditional release." The Colorado Supreme Court gave effect to this statutory provision through the promulgation of Crim. P. 35(c)(2)(VII). *See People v. Diaz*, 985 P.2d 83, 87 (Colo. App. 1999) (While "[t]he General Assembly has the power to enact substantive rules and statutes," "the supreme court has the power to promulgate rules governing

practice and procedure in civil and criminal cases."); *see also People v. Dye*, 2024 CO 2, ¶ 33.

¶ 16 The People do not thoroughly explain why, in their view, Abdul-Rahman's failure to appeal his revocation to the Appellate Body before seeking judicial review deprives us of subject matter jurisdiction over this appeal. But it appears that they are relying on the doctrine of administrative exhaustion, which "requires a party to pursue available statutory administrative remedies before obtaining judicial review of a claim" and which deprives a court of jurisdiction to hear an action "[w]here a party fails to exhaust these remedies." *Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1077 (Colo. 2011).

B. Standard of Review and Statutory Interpretation Authority

¶ 17 Statutory interpretation is a question of law that we review de novo. *People v. Gallegos*, 2013 CO 45, ¶ 7.

¶ 18 When interpreting a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *Cowen v. People*, 2018 CO 96, ¶ 12. "To do so, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings." *McCoy v. People*, 2019 CO 44, ¶ 37. "We read statutory

8

words and phrases in context, and we construe them according to the rules of grammar and common usage." *Id.*

¶ 19 Our interpretation of a statute "must also endeavor to effectuate the purpose of the legislative scheme." *Id.* at ¶ 38. Thus, we must "read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

¶ 20 "[I]f the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further." *Cowen*, ¶ 12. "Only if the statutory language is susceptible to more than one reasonable interpretation and is therefore ambiguous may we resort to extrinsic aids of construction to address the ambiguity and decide which reasonable interpretation to accept based on the legislature's intent." *Id.*

### C. Analysis

¶ 21 Relying on *People v. Back*, 2013 COA 114, the People assert that a court may not consider a defendant's Crim. P. 35(c) motion challenging the revocation of his parole unless the defendant first "appeal[s] his revocation to the appellate body of the parole board."

The Back division, however, did not resolve this question. Instead, the division merely described one avenue by which a parolee could seek review of a parole revocation decision. We do not read its decision as foreclosing any other authorized procedures for seeking judicial review.

> [A]fter the parole board revokes an individual's parole, [the parolee] may then appeal the decision to the appellate body of the parole board. *See* § 17-2-103(2)(b), C.R.S. 2012. If the appellate body affirms the parole board's order, the parolee may then file a motion with the district court based on an allegation that the decision results in the unlawful revocation of parole. *See* § 18-1-410(1)(h), C.R.S. 2012; Crim. P. 35(c)(2)(VII). It is not until the district court has ruled on the Crim. P. 35(c) motion that the parolee may appeal the decision for our review.

*Back*, ¶ 13.

¶ 22    Indeed, the *Back* division was focused on a different question and only discussed the procedural aspects of parole revocation review as part of its threshold inquiry into whether the defendant's re-release on parole rendered the substantive issue moot. *Id.* at ¶¶ 10-14. The division elected to address the issue because it was capable of repetition, yet evading review, in light of the appellate

process that Back had pursued and the opinion describes. *Id.* at ¶¶ 10, 13-14.

¶ 23     Accordingly, we do not agree with the People that *Back* resolved the jurisdictional issue before us. But to the extent that the *Back* division did intend to dictate the only procedure by which a parolee can seek review of a parole revocation decision, we choose to depart from that holding. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (divisions of the court of appeals are not bound by the decisions of other divisions).

¶ 24     Viewing the statutory scheme as a whole, we conclude that an administrative appeal of a parole revocation to the Appellate Body is not a prerequisite to judicial review of the decision. *See People v. Thomas*, 2020 COA 19M, ¶ 57 (We must discern the particular meaning of a statute's words and phrases "in the context of the statute as a whole."), *rev'd on other grounds*, 2021 CO 84; *People v. Sheth*, 2013 COA 33, ¶ 6 ("We read the statute as a whole and construe each provision consistently and harmoniously with the overall statutory design.").

¶ 25     Section 17-2-103(2)(b) states that a defendant whose parole has been revoked "may appeal [that decision] to two members of the

board."  "[T]he legislature's use of the term 'may' is generally indicative of a grant of discretion or choice among alternatives." *A.S. v. People*, 2013 CO 63, ¶ 21.  Thus, it appears that the plain language of the statute outlining the appellate procedure does not require a parolee to pursue an administrative appeal of his revocation before seeking judicial review under Crim. P. 35(c)(2)(VII).

¶ 26     But the definition of "may" depends on context.  As a division of this court recently recognized, "[w]here a statute or ordinance uses the word 'may' to refer to an administrative appeal process, Colorado courts have consistently imposed an exhaustion requirement."  *Colo. Stormwater Council v. Water Quality Control Div. of the Colo. Dep't of Pub. Health & Env't*, 2023 COA 11, ¶ 29.

¶ 27     In *Colorado Stormwater Council*, the division concluded that the use of "may" in the statute that created an administrative review process did not eliminate the plaintiff's obligation to pursue that remedy before seeking judicial review.  *Id.* at ¶ 32.  Specifically, the division held that, "by referring to section 24-4-105 in [the applicable statute], the General Assembly mandated an administrative hearing for parties challenging [an administrative action] before seeking judicial review."  *Id.* at ¶¶ 32, 34-40.

¶ 28    Here, we conclude that the legislature's use of the term "may" when defining the parole statutes' administrative review process does not mandate an appeal to the Appellate Body because, unlike in *Colorado Stormwater Council,* the legislature explicitly exempted parole revocation hearings from the requirements of section 24-4-105.  § 17-2-201(4)(b).  Indeed, in reaching its conclusion, the division in *Colorado Stormwater Council* distinguished two cases because they "dealt with provisions of the [applicable statutes] that did not direct parties to a hearing under section 24-4-105" or "reference section 24-4-105."  *Colo. Stormwater Council*, ¶ 33.  The division stated that, accordingly, "the parties [in those cases] could directly seek judicial review" or "discretionarily request reconsideration and a hearing."  *Id.*

¶ 29    We recognize that, "[w]here a permissive construction of the word 'may' does not fulfill the legislative purpose underlying a statute, we will construe the word 'to impose the mandatory requirement associated with the word "shall."'"  *A.S.*, ¶ 21 n.7 (quoting *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1113 (Colo. 1990)); *see also Walton v. People*, 2019 CO 95, ¶ 13 ("'Shall' is mandatory unless there is a clear indication otherwise.").  But we

13

are not convinced that the language that a parolee "may" appeal to the Appellate Body must be construed as a mandatory requirement to fulfill to the legislative intent regarding parole. *See* § 17-2-100.2, C.R.S. 2024 ("The general assembly hereby finds and declares that the primary consideration for any decision to grant parole shall be the public safety" and "that, since parole is a privilege granted by the general assembly and not a right guaranteed under the state or federal constitutions, if the parolee violates the conditions of his parole, that privilege may be revoked.").

¶ 30 Because we are not persuaded that the legislature's use of the term "may" in section 17-2-103(2)(b) requires the application of a mandatory requirement, we interpret the language that a parolee may appeal to the Appellate Body as permissive. *See A.S.*, ¶ 21; *see also McCoy*, ¶ 37.

¶ 31 Moreover, we note that section 17-2-201(4)(b) uses mandatory language when stating that "[j]udicial review of any revocation of parole shall be held pursuant to section 18-1-410(1)(h)." *See also People v. Melnick*, 2019 COA 28, ¶ 11. Importantly, this statutory provision refers to judicial review of "any revocation of parole," and

14

not to judicial review of the Appellate Body's parole revocation decision.

¶ 32     It is true that section 17-2-201(9)(c) also contains mandatory language that, if a parolee decides to appeal a parole revocation decision, the appeal "shall" be filed within thirty days of such decision.  Based on the language in the rest of subsection (9)(c), we deem the term "appeal" to refer to an administrative appeal with the Appellate Body.  *See Thomas*, ¶ 57.  But the inclusion of the term "shall" in this statutory provision does not persuade us that an appeal to the Appellate Body is required before initiating judicial review.  Instead, construing the statutory provisions together, we are convinced that the mandatory term "shall" there indicates only that, *if* a parolee wants an administrative review of a revocation decision, such appeal must be initiated within thirty days of the decision.  § 17-2-201(9)(c).  Alternatively, if a parolee prefers to proceed directly to judicial review of the revocation decision, such review must be held pursuant to section 18-1-410(1)(h).  § 17-2-201(4)(b).

¶ 33     As the dissent points out, it may well be true that requiring a parolee to seek an administrative review of a parole revocation

decision with the Appellate Body before initiating judicial review of the decision would be the better practice. *See Thomas*, 255 P.3d at 1077 (The doctrine of administrative exhaustion "promotes important policy interests, including the efficient use and conservation of judicial resources, by ensuring that courts intervene only if the administrative process fails to provide adequate remedies" and "enables an agency to make initial determinations on matters within its expertise, identify and correct its own errors, and develop a factual record that will benefit the court if satisfactory resolution cannot be reached through the administrative process."). But in our view, that would be inconsistent with the permissive language of section 17-2-103(2)(b); the exemption of revocation hearings from the requirements of section 24-4-105 under section 17-2-201(4)(b); and the express right to judicial review of a parole revocation decision afforded by section 17-2-201(4)(b), section 18-1-410(1)(h), and Crim. P. 35(c)(2)(VII).

¶ 34    Accordingly, we conclude that an appeal of a parole revocation decision with the Appellate Body is not a prerequisite to initiating judicial review of the decision. Thus, Abdul-Rahman's appeal is properly before us.

### III. Parole Revocation Decision

¶ 35 Turning to the substantive issue in this appeal, Abdul-Rahman contends that he should have been granted an evidentiary hearing on his Crim. P. 35(c) motion because he alleged facts that, if true, would entitle him to relief from the assertedly unlawful revocation of his parole. We disagree.

### A. Standard of Review and Legal Authority

¶ 36 We review a trial court's summary denial of a Crim. P. 35(c) motion for postconviction relief de novo. *People v. Cali*, 2020 CO 20, ¶ 14. Defendants need not set forth the evidentiary support for their allegations in a Crim. P. 35 motion, but instead need only assert facts that, if true, would provide a basis for relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988). A Crim. P. 35(c) motion for postconviction relief may be denied without an evidentiary hearing only when the motion, files, and record clearly establish that the defendant's allegations are without merit and do not warrant relief. *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

¶ 37 At a parole revocation hearing, the division of adult parole has the burden of establishing the alleged parole condition violation by a preponderance of the evidence. § 17-2-103(9)(a); *see also* § 18-

17

1.3-1010(1)(a). However, a parole violation based on the commission of a criminal offense must be established by proof beyond a reasonable doubt. § 17-2-103(9)(a).

¶ 38    Any evidence having probative value is admissible at a hearing on a parole violation complaint, regardless of its admissibility under the rules of evidence. *Id.* The parolee shall have the right to present witnesses and evidence and to confront and cross-examine adverse witnesses. § 17-2-103(8), (9)(a).

¶ 39    If parole is revoked, the Board shall provide the parolee with a written statement as to the evidence relied on and the reasons for parole revocation decision. § 17-2-103(11)(a); *see also* § 17-2-201(9)(b).

## B.    Analysis

¶ 40    Abdul-Rahman argues that the Board improperly denied him the opportunity to present witnesses and evidence and to cross-examine his parole officer and that, but for these errors, the Board would not have found that he violated his parole or would have decided that any violation did not warrant the revocation of parole. We are not convinced.

¶ 41     Abdul-Rahman's motion did not identify the parole condition or conditions the Board found him to have violated or the reasons for its decision to revoke his parole upon the violation findings. Indeed, in his opening brief, Abdul-Rahman states that the revocation of his parole was "presumably based solely on violation #2 in the [c]omplaint, as there is no indication from the [c]ourt [f]ile demonstrating that the prosecution made any sufficient showing regarding violations #1 and #3 from the parole officer's [c]omplaint." Yet Abdul-Rahman should be in possession of information explaining the Board's violation determination and its reasons for revoking his parole. *See* § 17-2-103(11)(a); § 17-2-201(9)(b).

¶ 42     Thus, even if we accept as true Abdul-Rahman's assertions that he was denied the right to present evidence and cross-examine witness, we are unable to determine whether he would be entitled to relief from these alleged errors in the absence of factual allegations as to the Board's findings on the parole violation complaint and its reasoning for deciding to revoke his parole. Specifically, we cannot evaluate whether his witnesses' testimony would have altered the outcome of the parole violation hearing or whether the evidence would have factored into the Board's decision to revoke parole. *See*

19

*People v. Delgado*, 2019 COA 55, ¶ 8 ("[A] court may deny [a Crim. P. 35(c)] motion without a hearing . . . if the claims are bare and conclusory in nature and lack supporting factual allegations."); *see also Martinez v. Patterson,* 429 F.2d 844, 848 (10th Cir. 1970) (parole board revocation proceedings are afforded a presumption of correctness).

¶ 43     Importantly, we note that Abdul-Rahman continues to challenge all three parole violation allegations, including the allegation based on his commission of a criminal offense. Notwithstanding the ultimate dismissal of the criminal charge, the Board is authorized to independently evaluate the allegation and determine whether he committed the alleged assault. *See* § 17-2-103(9)(a). And if the Board found that Abdul-Rahman had violated his parole by committing this offense, it would have done so based on proof beyond a reasonable doubt. *See id.* Abdul-Rahman does not explain why his witnesses' testimony, if admitted, would have changed the finding on this allegation.

IV.   Disposition

¶ 44     For the reasons set forth above, we conclude that an administrative review of a parole revocation decision by the

Appellate Body of the Board is not a prerequisite to the parolee's exercise of their right to seek judicial review of the lawfulness of the revocation decision. Nonetheless, because the Board did not reversibly err, we affirm the postconviction court's order denying Abdul-Rahman's Crim. P. 35(c) motion.

JUDGE FOX concurs.

JUDGE SULLIVAN dissents.

JUDGE SULLIVAN, dissenting.

¶ 45    The majority holds that a parolee seeking judicial review of a decision of the State Parole Board (Board) revoking their parole need not exhaust their available administrative remedies before seeking judicial relief under Crim. P. 35(c)(2)(VII) and section 18-1-410(1)(h), C.R.S. 2024.  Because I view a parolee's duty to exhaust available administrative remedies as mandatory under the governing statutory framework and the supreme court's precedent, I would hold that Abdul-Rahman's failure to avail himself of those remedies deprived the district court of subject matter jurisdiction, requiring that we vacate the court's order.  I therefore respectfully dissent.

¶ 46    Our supreme court has long adhered to the doctrine of administrative exhaustion, recognizing the doctrine is "very clearly settled and without appreciable conflict."  *Hannum v. Hillyard*, 278 P.2d 1015, 1017 (Colo. 1955); *accord First Nat'l Bank v. Patterson*, 176 P. 498, 501 (Colo. 1918) ("The aforesaid [state tax] tribunals were open to plaintiff in error prior to the laying of the tax, but it refrained from seeking relief therein, and may not now complain.").  Absent an exception, "[t]he doctrine of administrative exhaustion

*requires* a party to pursue available statutory administrative remedies before obtaining judicial review of a claim." *Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1077 (Colo. 2011) (emphasis added). Exhaustion of administrative remedies is therefore the default rule. If a party fails to exhaust available administrative remedies, the court lacks jurisdiction to hear the action.[1] *Id.* (citing *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1988)).

¶ 47      Requiring administrative exhaustion serves several laudable goals. The doctrine (1) allows agencies with subject matter expertise to develop the necessary factual record upon which the agency and reviewing courts may base their decisions; (2) promotes efficiency by preventing the interruption and fragmentation of the administrative process; (3) allows the agency an opportunity to correct its own errors, thus preserving the agency's autonomy; and (4) conserves judicial resources by ensuring that reviewing courts

---

[1] Some members of the supreme court are skeptical that a litigant's failure to exhaust administrative remedies constitutes a jurisdictional defect. *See Masterpiece Cakeshop, Inc. v. Scardina*, 2024 CO 67, ¶ 120 (Gabriel, J., dissenting). But until a majority of the court holds otherwise, divisions of this court are bound to apply the supreme court's precedent characterizing exhaustion of administrative remedies as jurisdictional. *See People v. Smith*, 183 P.3d 726, 729 (Colo. App. 2008).

intervene only if the administrative process fails to provide an adequate remedy. *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212-13 (Colo. 2000).

¶ 48    In my view, the doctrine of administrative exhaustion fits neatly with the statutory framework governing parole revocation hearings. If a parolee's initial parole revocation hearing, heard by one Board member, results in revocation, the parolee "may appeal" to two members of the Board, known as the appellate body, which then hears the appeal "on the record." § 17-2-103(2)(b), C.R.S. 2024. The appellate body doesn't include the Board member who presided over the initial hearing. § 17-2-201(9)(c), C.R.S. 2024. After reviewing the record within fifteen working days of the parolee filing their appeal, the appellate body must notify the parolee of its decision within ten working days after reaching a decision. *Id.* If the appellate body upholds the revocation, the parolee at that point may may seek judicial review in district court. *See* Crim. P. 35(c)(2)(VII); § 18-1-410(1)(h); *People v. Back,* 2013 COA 114, ¶ 13.[2]

---

[2] While the division in *People v. Back*, 2013 COA 114, ¶ 13, described how the administrative appeals process precedes judicial review, I agree with the majority that it doesn't directly answer whether administrative exhaustion before the Board is mandatory.

¶ 49    Given this statutory framework, all agree that Abdul-Rahman had an administrative appeal remedy available to him before the appellate body.  And no one disputes that Abdul-Rahman failed to pursue that remedy and instead proceeded directly to the district court to challenge the Board's initial revocation decision.  Thus, under "clearly settled" supreme court precedent, Abdul-Rahman failed to exhaust his available administrative remedies, depriving the district court of subject matter jurisdiction to review the Board's decision.  *Hannum*, 278 P.2d at 1017; *see also Kriz v. Colo. Dep't of Revenue*, 916 P.2d 659, 661-62 (Colo. App. 1996) (vacating district court's judgment for lack of subject matter jurisdiction where plaintiff failed to exhaust administrative remedies).

¶ 50    The majority concludes that exhaustion in the parole revocation context is nonetheless optional because section 17-2-103(2)(b) says that the parolee "may appeal" to the appellate body, and "may" is normally construed to impose a permissive, rather than a mandatory, obligation.  *But see Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1113 (Colo. 1990) (explaining "may" can mean "shall" if the legislature's purpose underlying the statute isn't fulfilled by a permissive construction).  But not even Abdul-

Rahman adopts this view. Although he appears to overlook section 17-2-103(2)(b)'s language, Abdul-Rahman concedes that divisions of this court have consistently interpreted "may appeal" in the administrative appeals process as imposing a mandatory duty to exhaust administrative remedies. *See Colo. Stormwater Council v. Water Quality Control Div. of the Colo. Dep't of Pub. Health & Env't,* 2023 COA 11, ¶¶ 29-30 (discussing *Egle v. City & County of Denver,* 93 P.3d 609, 612-13 (Colo. App. 2004), and *Colorado Department of Public Health & Environment v. Bethell,* 60 P.3d 779, 783 (Colo. App. 2002)).

¶ 51 Courts in other jurisdictions have reached the same conclusion in the administrative context, rejecting calls to dispense with administrative exhaustion. *See, e.g., Gen. Elec. Credit Corp. of Ga. v. Metro. Dade Cnty.,* 346 So. 2d 1049, 1053 (Fla. Dist. Ct. App. 1977) (rejecting argument that a statute's "may" appeal language is "permissive in nature"); *Muije v. Dep't of Soc. & Health Servs.,* 645 P.2d 1086, 1087 (Wash. 1982) (statute's use of "may appeal" "is not merely permissive" and is "jurisdictional rather than procedural in nature"); *Gregg Cnty. v. Farrar,* 933 S.W.2d 769, 775 (Tex. App. 1996) (rejecting "semantic argument" that "the employee manual

makes an appeal to the commissioner's court optional by stating that the decision of the grievance committee *may* be appealed"); *Terris v. Cnty. of Santa Barbara*, 229 Cal. Rptr. 3d 407, 413 (Ct. App. 2018) ("[E]xhaustion of administrative remedies is mandatory 'even though the administrative remedy is couched in permissive language.'") (citation omitted). And while outside the administrative agency setting, the United States Supreme Court and our supreme court have come to similar conclusions in the collective bargaining context. *See Albertson's, Inc. v. Rhoads*, 582 P.2d 1049, 1050 (Colo. 1978) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). Drawing on *Maddox*, our supreme court in *Albertson's* explained that a collective bargaining agreement that said the union "may" submit grievances to the employer doesn't mean that the union or its members can skip those procedures in favor of filing a lawsuit. *See Albertson's*, 582 P.2d at 1050.

¶ 52    I agree with the reasoning of these courts. Indeed, the General Assembly's decision to use its permissive "may appeal" language when describing a parolee's ability to pursue further administrative review makes intuitive sense. A parolee is never *obligated* to pursue an administrative appeal. *See* § 17-2-201(9)(c) (imposing filing

27

deadline "*[i]f* the parolee decides to appeal") (emphasis added). If they so choose, it remains their prerogative to simply follow the Board's initial decision and forgo further administrative review. *See, e.g.*, *Nw. Ecosystem All. v. Wash. Forest Pracs. Bd.*, 66 P.3d 614, 618 (Wash. 2003) ("There is . . . no mandatory duty to pursue an administrative remedy — a party can simply give up."). In that event, however, the parolee must abide by the consequences of their decision, including relinquishing their ability to seek judicial review of the Board's decision.

¶ 53    Even so, the majority says that the courts' holdings in cases like *Colorado Stormwater Council*, *Egle*, and *Bethell* are distinguishable because the General Assembly explicitly exempted parole revocation hearings from the requirements of section 24-4-105, C.R.S. 2024, a provision within the Administrative Procedure Act (APA). *See* § 17-2-201(4)(b). But I don't see why this carve-out from the APA matters. Section 24-4-105 of the APA is primarily concerned with the procedural aspects of agency hearings and determinations, so exempting an agency from its technical requirements tells us little about whether a party must still exhaust *non*-APA procedures made available by the agency. And although

28

section 24-4-105(14)(c) admittedly contains an exhaustion requirement, removing that statutory obligation doesn't obviate a parolee's duty to comply with the supreme court's default rule mandating administrative exhaustion.  Recall, the supreme court has long required administrative exhaustion, even before the APA existed.  *See, e.g., Patterson*, 176 P. at 501.

¶ 54     Even putting aside a parolee's duty to comply with longstanding supreme court precedent, I'm not convinced that section 17-2-201(4)(b)'s carve-out from the APA sweeps as wide as the majority perceives.  The statutory carve-out operates on *the Board*, not the parolee, as shown by the section's opening phrase, "[t]he board has the following powers and duties."  § 17-2-201(4).  Nothing in section 17-2-201(4) purports to impose or remove *a parolee's* prerequisites to seeking judicial review.

¶ 55     In any event, the General Assembly has already indicated that an agency's exemption from section 24-4-105 isn't inherently incompatible with the doctrine of administrative exhaustion.  In section 17-1-111, C.R.S. 2024, for example, the General Assembly has largely exempted the Department of Corrections from section 24-4-105, while in section 13-17.5-102.3(1), C.R.S. 2024, it has

simultaneously said that an inmate challenging prison conditions must exhaust their administrative remedies before filing a civil court action. Just as these two sections can coexist, so too can section 17-2-201(4)(b) and the default rule requiring administrative exhaustion. *Cf. People v. Justice*, 2023 CO 9, ¶ 34 (Courts "strive to construe statutes harmoniously, 'so as to avoid any conflict between them.'") (citation omitted).

¶ 56 The majority also relies on section 17-2-201(4)(b)'s statement that "[j]udicial review of *any* revocation of parole shall be held pursuant to section 18-1-410(1)(h)," believing it signals an implicit legislative intent to allow parolees to sidestep review by the Board's appellate body. (Emphasis added.) I fail to glean such intent. The General Assembly knows how to relieve a party from the doctrine of administrative exhaustion when it intends to. *See, e.g.*, § 24-50-1113(3), C.R.S. 2024 (controversies regarding unfair labor practices of the state or a certified employee organization "may be" submitted to the division of labor and statistics, but a "claimant is not required to exhaust administrative remedies" before pursuing a legal action); § 38-12-1105(12), C.R.S. 2024 (mobile home park landlords, home owners, and residents need not exhaust

administrative remedies under the division of housing's dispute resolution program before filing a legal action); § 25-8-1007(4), C.R.S. 2024 (mobile home park resident may file legal action for water quality violations without awaiting exhaustion of administrative remedies). Had the General Assembly intended to relieve parolees from their duty to exhaust administrative remedies, it would have done so expressly. *Cf. Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 362 (Colo. 2003) (legislature's use of "fair market value" in many statutes indicates it knows how to use the phrase).

¶ 57    Finally, although the statutory framework and our supreme court's precedent should fully resolve this case, I harbor concerns that the majority's decision allowing parolees to leapfrog the Board's appellate body will frustrate the underlying goals served by the doctrine of administrative exhaustion. *See United Air Lines, Inc.*, 8 P.3d at 1212-13. For example, allowing parolees to bypass the appellate body's review will deprive the Board of its ability to correct errors committed by the single Board member who presided over the initial revocation hearing, potentially leading to even more protracted litigation that could have been avoided. *See, e.g., Town*

31

*of Breckenridge v. Egencia, LLC*, 2018 COA 8, ¶ 67 (had party exhausted available administrative remedies, the town's "finance director would have had an opportunity to apply his expertise and may have arrived at a satisfactory determination — therefore ultimately conserving judicial resources."), *aff'd*, 2019 CO 39.

¶ 58 Dispensing with administrative exhaustion will also reduce efficiency and result in delayed outcomes. While a parolee's administrative appeal progresses quickly — the appellate body must review the administrative record within fifteen working days and then notify the parolee of its decision within ten working days of reaching a decision, *see* § 17-2-201(9)(c) — requests for judicial review under Crim. P. 35(c) rarely move so rapidly.

¶ 59 Perhaps most relevant here, eliminating the administrative exhaustion requirement will inhibit reviewing courts from determining whether a parolee is ultimately entitled to relief. As the majority explains, we're unable to discern the basis for the Board's initial revocation in this case because its decision is not contained in our appellate record. While the reason for its omission is unclear (Abdul-Rahman should have been served with the Board's decision, *see* § 17-2-103(11)(a)), maintaining the administrative exhaustion

requirement would have likely fixed this problem by allowing the appellate body an opportunity to compile a full administrative record. *See* § 17-2-103(2)(b) (parolee's administrative appeal "shall be on the record"); *Town of Breckenridge*, ¶ 67 ("[P]rior administrative review would have helped to develop a factual record for the district court's review.").

¶ 60    For these reasons, I would hold that Abdul-Rahman failed to exhaust his available administrative remedies before the Board, depriving the district court of subject matter jurisdiction to decide his Crim. P. 35(c) motion and requiring that we vacate the court's order.

¶ 61    Accordingly, I respectfully dissent.