1
 2026 CO 33 The People of the State of Colorado, Petitioner v. Shams Abdul-Rahman. Respondent No. 24SC774Supreme Court of Colorado, En BancMay 26, 2026
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 23CA486
 
 
          
 Attorneys for Petitioner: Philip J. Weiser, Attorney General
 Erin K. Grundy, First Assistant Attorney General Leo T.
 Nguyen, Assistant Attorney General Fellow Denver, Colorado
 
 
          
 Attorneys for Respondent: Parsons Law Office Jeffrey C.
 Parsons Broomfield, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado State Board of Parole:
 Philip J. Weiser, Attorney General Tara Buchalter, Senior
 Assistant Attorney General
 
 2
 
          Graham
 Gerhart, Assistant Attorney General Denver, Colorado
 
 
           CHIEF
 JUSTICE MARQUEZ delivered the Opinion of the Court, in which
 JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE SAMOUR, and JUSTICE
 BLANCO joined. JUSTICE GABRIEL dissented. JUSTICE
 BERKENKOTTER did not participate.
 
 3
 
          
 OPINION
 
 
          
 MÁRQUEZ, CHIEF JUSTICE.
 
 
          ¶1
 The Colorado State Board of Parole ("Board")
 determined that defendant Shams Abdul-Rahman violated the
 conditions of his parole and revoked it. Instead of appealing
 the revocation decision to the Board's appellate body,
 AbdulRahman petitioned the Boulder County District Court for
 postconviction relief pursuant to Crim. P. 35(c). The
 postconviction court summarily denied AbdulRahman's
 petition on the merits. Abdul-Rahman appealed. In a published
 opinion, a division of the court of appeals concluded that
 the parole revocation statutory scheme did not require
 administrative exhaustion and affirmed the postconviction
 court's order. We granted the People's petition for a
 writ of certiorari to consider whether a parolee must exhaust
 their administrative remedies by appealing first to the
 Board's appellate body before seeking judicial
 review.[1]
 
 
          ¶2
 We hold that a parolee seeking review of the Board's
 initial revocation decision must exhaust their administrative
 remedies before petitioning a court for postconviction relief
 under Crim. P. 35(c). We conclude that the plain language of
 the statutes governing parole revocation appeals,
 specifically section 17-2-103,
 
 4
 
 C.R.S. (2025), and section 17-2-201, C.R.S. (2025),
 unambiguously requires an administrative appeal to precede
 judicial review. We further conclude that requiring parolees
 to use the administrative appeal process that the General
 Assembly provided falls squarely within Colorado's
 longstanding administrative exhaustion doctrine and furthers
 the policy interests animating this doctrine.
 
 
          ¶3
 Because Abdul-Rahman failed to seek an administrative appeal,
 the postconviction court lacked jurisdiction to review his
 Crim. P. 35(c) petition. Accordingly, we vacate the judgment
 of the court of appeals and remand the case with instructions
 to return it to the postconviction court for dismissal based
 on lack of jurisdiction.
 
 
          I.
 Facts and Procedural History
 
 
          ¶4
 Abdul-Rahman was convicted of sexual assault. The trial court
 imposed an indeterminate sentence pursuant to the Colorado
 Sex Offender Lifetime Supervision Act. See
 §§ 18-1.3-1001 to -1012, C.R.S. (2025). After
 serving time in prison, Abdul-Rahman was paroled. While on
 parole, his parole officer served him with a parole
 revocation complaint and summons alleging that he violated
 his parole conditions and ordering him to appear before the
 Board. Following a revocation hearing, the Board revoked
 Abdul-Rahman's parole.
 
 
          ¶5
 Abdul-Rahman later petitioned the Boulder County District
 Court for postconviction relief pursuant to Crim. P.
 35(c)(2)(VII), contending that the
 
 5
 
 revocation was unlawful. The People filed a written response
 but did not raise any arguments related to Abdul-Rahman's
 failure to appeal to the Board's appellate body. The
 postconviction court denied the petition on the merits
 without an evidentiary hearing.
 
 
          ¶6
 Abdul-Rahman appealed. In response, the People argued for the
 first time that the court of appeals lacked subject matter
 jurisdiction because Abdul-Rahman was statutorily required to
 pursue an administrative appeal before seeking judicial
 review but had failed to do so. People v.
 Abdul-Rahman, 2024 COA 118, ¶ 10, 563 P.3d 682,
 685. In a divided opinion, the division disagreed.
 Id. at ¶ 24, 563 P.3d at 687.
 
 
          ¶7
 The division majority concluded that the relevant parole
 revocation statutory scheme makes an administrative appeal
 discretionary. Id. Specifically, it looked at
 section 17-2-103(2)(b), which states that a parolee "may
 appeal [a parole revocation decision] to two members of the
 [B]oard." Abdul-Rahman, ¶¶ 25-30, 563
 P.3d at 687-88 (quoting § 17-2-103(2)(b)). The division
 majority concluded that the use of "may" indicates
 a choice between seeking administrative review and seeking
 judicial review. Id. at ¶ 30, 563 P.3d at 688.
 Though the State Administrative Procedure Act
 ("APA") requires administrative exhaustion as a
 general rule, § 24-4-105(14)(c), C.R.S. (2025), the
 division majority reasoned that section 17-2-201(4)(b) refers
 to judicial review of "any revocation of parole"
 and
 
 6
 
 expressly exempts parole revocation hearings from the
 APA's hearing requirements. Abdul-Rahman,
 ¶¶ 28, 31, 563 P.3d at 688 (quoting §
 17-2-201(4)(b)). It further reasoned that this exemption
 included the APA's general exhaustion requirement.
 Id. The division majority did not believe that an
 exhaustion requirement was necessary to fulfill the
 legislative intent regarding parole, nor was it persuaded
 that the policy purposes underlying administrative exhaustion
 counterbalanced the statutory language. Id. at
 ¶¶ 29, 33, 563 P.3d at 688-89. Thus, it concluded
 that the appeal was properly before it. Id. at
 ¶ 34, 563 P.3d at 689. After considering the merits, the
 division majority affirmed the postconviction court's
 denial of Abdul-Rahman's Crim. P. 35(c) petition without
 an evidentiary hearing. Id. at ¶¶ 35, 44,
 563 P.3d at 689-90.
 
 
          ¶8
 Judge Sullivan dissented. In his view, administrative
 exhaustion is mandatory under the governing statutory
 framework and our case law. Id. at ¶ 45, 563
 P.3d at 690 (Sullivan, J., dissenting). Specifically, Judge
 Sullivan interpreted the phrase "may appeal" in
 section 17-2-103(2)(b) to reflect the parolee's choice
 between appealing or not appealing the revocation decision.
 Id. at ¶ 48, 563 P.3d at 691. He further
 asserted that if the General Assembly had intended to depart
 from the "default rule" that parties must exhaust
 administrative remedies, it would have expressly said so.
 Id. at ¶¶ 46, 53, 56, 563 P.3d at 690,
 692-93. Judge Sullivan also stated that allowing parolees to
 "leapfrog" the administrative
 
 7
 
 appeals process frustrates the goals of the administrative
 exhaustion doctrine. Id. at ¶¶ 57-59, 563
 P.3d at 693. He concluded that because Abdul-Rahman failed to
 seek an administrative appeal, the postconviction court
 lacked subject matter jurisdiction over his case and its
 decision should be vacated. Id. at ¶ 60, 563
 P.3d at 693.
 
 
          ¶9
 We granted the People's petition for certiorari review.
 
 
          II.
 Analysis
 
 
          ¶10
 As a preliminary matter, we note that the People did not
 challenge the postconviction court's jurisdiction when
 Abdul-Rahman's Crim. P. 35(c) petition was before it, and
 a party is "generally precluded from raising an issue on
 appeal if he failed to object." Herr v. People,
 198 P.3d 108, 111 (Colo. 2008). However, "[b]ecause we
 must always satisfy ourselves that we have jurisdiction to
 hear an appeal, we may raise jurisdictional defects sua
 sponte, regardless of whether the parties have raised the
 issue." People v. S.X.G., 2012 CO 5, ¶ 9,
 269 P.3d 735, 737. Thus, because it implicates the
 postconviction court's jurisdiction to review
 Abdul-Rahman's Crim. P. 35(c) petition, we may consider
 whether the statutory scheme governing parole revocation
 required Abdul-Rahman to first appeal to the Board's
 appellate body before seeking judicial review.
 
 
          ¶11
 We first discuss the well-established doctrine of
 administrative exhaustion. We then turn to the parole
 revocation statutory scheme. After reciting our
 
 8
 
 standard of review and rules of statutory construction, we
 examine the relevant statutes at issue here, sections
 17-2-103 and 17-2-201. We conclude that the administrative
 exhaustion of remedies in the parole revocation context is a
 jurisdictional prerequisite to judicial review.
 
 
          A.
 The Exhaustion of Administrative Remedies Doctrine
 
 
          ¶12
 "The doctrine of administrative exhaustion requires a
 party to pursue available statutory administrative remedies
 before obtaining judicial review of a claim." Thomas
 v. Fed. Deposit Ins. Corp., 255 P.3d 1073, 1077 (Colo.
 2011). Until a party exhausts available statutory
 administrative remedies, the matter is still within the
 jurisdiction of the administrative authority, which is part
 of the executive branch. Horrell v. Dep't of
 Admin., 861 P.2d 1194, 1197 (Colo. 1993). In other
 words, the administrative exhaustion doctrine rests on the
 principle that the separation of powers prevents the
 judiciary from interfering with a function that the General
 Assembly delegated to the executive branch. See Crow v.
 Penrose-St. Francis Healthcare Sys., 169 P.3d 158, 164
 (Colo. 2007); State Pers. Bd. v. Dist. Ct., 637 P.2d
 333, 335 (Colo. 1981). Accordingly, in cases where the
 statutory scheme makes clear that the doctrine applies, we
 have recognized for almost a century in Colorado that
 exhaustion is a jurisdictional prerequisite to judicial
 review. See, e.g., Thomas, 255 P.3d at 1077;
 State v. Golden's Concrete Co., 962 P.2d 919,
 923 (Colo. 1998);
 
 9
 
 Gramiger v. Crowley, 660 P.2d 1279, 1281 (Colo.
 1983); Heron v. City of Denv., 283 P.2d 647, 650
 (Colo. 1955); People v. Dist. Ct., 287 P. 849,
 851-53 (Colo. 1930).
 
 
          ¶13
 Exhaustion also serves important policy interests.
 Golden's Concrete Co., 962 P.2d at 923.
 Specifically, exhaustion preserves the authority of
 administrative agencies, enabling them to utilize their
 subject matter expertise, correct their own errors, and
 develop an adequate factual record for judicial review.
 Thomas, 255 P.3d at 1077. Additionally, "the
 requirement of exhaustion conserves judicial resources by
 [e]nsuring that courts intervene only if the administrative
 process fails to provide adequate remedies." City
 &Cnty. of Denv. v. United Air Lines, Inc., 8 P.3d
 1206, 1213 (Colo. 2000).
 
 
          ¶14
 In limited circumstances, a court may entertain a party's
 claim when the party has not satisfied the exhaustion
 requirement. Thomas, 255 P.3d at 1077. Specifically,
 a court may determine that exhaustion is not required when
 "available administrative remedies are ill-suited for
 providing the relief sought," Horrell, 861 P.2d
 at 1197; the "matters in controversy consist of
 questions of law rather than issues committed to
 administrative discretion and expertise," id.; or
 "it is 'clear beyond a reasonable doubt' that
 pursuit of relief from the agency would be
 'futile,'" Thomas, 255 P.3d at 1077
 (quoting United Air Lines, Inc., 8 P.3d at 1213).
 But "[i]f complete, adequate, and speedy administrative
 remedies are available, a
 
 10
 
 party must pursue these remedies before filing suit in
 district court." United Air Lines, Inc., 8 P.3d
 at 1212.
 
 
          ¶15
 With this context in mind, we turn to the issue of whether
 the parole revocation statutory scheme requires
 administrative exhaustion.
 
 
          B.
 The Parole Revocation Statutory Scheme
 
 
          ¶16
 We begin with our standard of review and principles of
 statutory construction. We next explain the parole revocation
 process and examine the language of the statutes at issue
 here, section 17-2-103 and section 17-2-201. We conclude that
 the statutory language unambiguously requires an
 administrative appeal of the Board's initial parole
 revocation decision as a jurisdictional prerequisite to
 judicial review.
 
 
          1.
 Standard of Review and Principles of Statutory
 Construction
 
 
          ¶17
 Statutory construction presents a question of law that we
 review de novo. Mostellar v. City of Colo. Springs,
 2026 CO 22, ¶ 17, 587 P.3d 168, 172.
 
 
          ¶18
 In construing a statute, our primary purpose is to give
 effect to the legislature's intent, which we discern by
 first looking to the language of the statute.
 Thomas, 255 P.3d at 1077. We give words and phrases
 their plain and ordinary meanings. Mostellar, ¶
 17, 587 P.3d at 172. Additionally, we must construe the
 legislative scheme as a whole, "giving consistent,
 harmonious, and sensible effect to all of its parts."
 McCoy v. People, 2019 CO 44, ¶ 38, 442 P.3d
 379, 389. We must
 
 11
 
 also "avoid constructions that would render any words or
 phrases superfluous or lead to illogical or absurd
 results." Id.
 
 
          ¶19
 If the language in the provision is unambiguous, then we
 apply it as written and need not use other tools of statutory
 construction. Mostellar, ¶ 18, 587 P.3d at 172.
 
 
          2.
 The Parole Revocation Process
 
 
          ¶20
 The General Assembly created the Board within the Department
 of Corrections in Colorado's executive branch.
 See § 17-2-201(1)(a); § 24-1-128.5(3),
 C.R.S. (2025). Among its other statutory powers, "the
 [B]oard has exclusive power to conduct all proceedings
 involving an application for revocation of parole."
 § 17-2-201(7).
 
 
          ¶21
 The parole revocation process generally begins with a
 complaint for revocation charging the parolee with violating
 one or more conditions of parole. § 17-2-103(3), (6)(a);
 § 17-2-103.5(1)(a), C.R.S. (2025). Depending on the
 allegations, the Board may then conduct a parole revocation
 hearing adjudicating the charges, over which one Board member
 or administrative hearing officer presides. §§
 17-2-103(2)(b), -103.5(1)(c); State Bd. of Parole, 8 Colo.
 Code Regs. 1511-1:13.02 (2013). If the Board determines that
 the parolee has violated the conditions of their parole, it
 generally has the discretion to revoke parole, continue it in
 effect, or modify its conditions. § 17-2-103(11); §
 17-22.5-403(8)(b), C.R.S. (2025).
 
 12
 
          ¶22
 Both the State and the parolee "may appeal" the
 Board's revocation decision to the Board's appellate
 body, which is comprised of two Board members who did not
 adjudicate the complaint. §§ 17-2-103(2)(b),
 -201(9)(c)-(d). Finally, there is an opportunity for judicial
 review pursuant to section 18-1-410(1)(h), C.R.S. (2025), and
 Crim. P. 35(c)(2)(VII).[2] § 17-2-201(4)(b).
 
 
          ¶23
 With this background, we now turn to whether the parole
 revocation statutory scheme requires a parolee to appeal to
 the Board's appellate body before seeking judicial
 review.
 
 
          3.
 The Parole Revocation Statutory Scheme Requires Exhaustion of
 Administrative Remedies
 
 
          ¶24
 Although the parole revocation statutory scheme is complex,
 when viewed as a whole, it unambiguously requires
 administrative exhaustion. Cf. Thomas, 255 P.3d at
 1078 ("[C]omplexity is not ambiguity."). Read
 harmoniously, the statutes governing parole revocation
 appeals, section 17-2-103 and section 17-2-201, unambiguously
 require an administrative appeal of the Board's
 revocation decision as a prerequisite to judicial review.
 This conclusion fits
 
 13
 
 soundly within and advances the purposes of our longstanding
 administrative exhaustion doctrine.
 
 
          ¶25
 First, we note that section 17-2-201(7) expressly reserves
 for the Board "exclusive power to conduct all
 proceedings involving an application for revocation of
 parole." The phrase "all proceedings
 involving" parole revocation in section 17-2-201(7)
 includes adjudicating the parole revocation complaint, §
 17-2-103(2); determining its disposition, §
 17-2-103(11); and reviewing any appeal, §§
 17-2-103(2)(b), -201(9)(c)-(d). Thus, until available
 revocation proceedings are complete, the parole revocation
 application remains within the Board's exclusive
 jurisdiction.
 
 
          ¶26
 Section 17-2-201(9)(c) confirms the Board's exclusive
 power over appeals of initial revocation decisions,
 prescribing the following process:
 
 
 If the parolee decides to appeal the decision to revoke his
 parole, such appeal shall be filed within thirty days of such
 decision. The parolee shall remain in custody pending the
 appeal. Two members of the [B]oard, excluding the one who
 conducted the revocation proceeding, shall review the record
 within fifteen working days after the filing of the appeal.
 They shall notify the parolee of their decision in writing
 within ten working days after such decision has been made.
 
 
          ¶27
 The plain language of this provision makes clear that
 "[i]f the parolee decides to appeal the decision to
 revoke his parole," the parolee "shall" appeal
 to the Board's appellate body within thirty days. §
 17-2-201(9)(c); see also Walton v. People, 2019 CO
 95, ¶ 13, 451 P.3d 1212, 1216 ("'Shall' is
 mandatory unless there is
 
 14
 
 a clear indication otherwise."). Put differently, this
 provision expressly prescribes an appeal process that is
 solely administrative; it makes no mention of alternatively
 seeking judicial review. See Turbyne v. People, 151
 P.3d 563, 567 (Colo. 2007) ("We do not add words to the
 statute or subtract words from it.").
 
 
          ¶28
 Despite the plain language of these provisions, Abdul-Rahman
 argues that an appeal to the Board is allowed but
 not required before seeking judicial review. He
 points to section 17-2-103(2)(b) and section 17-2-201(4)(b)
 in support of his interpretation. He also asserts that
 requiring a parolee to appeal to the Board's appellate
 body before seeking judicial review does not further the
 policy purposes of the administrative exhaustion doctrine. We
 take each contention in turn.
 
 
          ¶29
 Section 17-2-103(2)(b) states that the parolee "may
 appeal to two members of the [B]oard." Abdul-Rahman
 argues that the General Assembly knows the difference between
 "may" and "shall," and its use of
 "may" in section 17-2-103(2)(b) reflects
 legislative intent to give the parolee the option to seek
 either administrative or judicial review of an initial
 revocation decision. However, Abdul-Rahman's reading is
 inconsistent with the plain and ordinary meaning of this
 phrase and with the statutory scheme as a whole.
 
 
          ¶30
 The plain and ordinary meaning of "may appeal" is
 permission to appeal — that is, a parolee can choose to
 appeal the initial revocation decision. See May,
 Merriam-Webster Dictionary, https://www.merriam-webster.com/
 
 15
 
 dictionary/may [https://perma.cc/7UD4-FYUG] (defining
 "may" as "used to indicate possibility or
 probability" or "have permission to");
 A.S. v. People, 2013 CO 63, ¶ 21, 312 P.3d 168,
 173 ("[T]he legislature's use of the term
 'may' is generally indicative of a grant of
 discretion or choice among alternatives."). Implied in
 the grant of permission is the understanding that one may
 choose not to appeal and allow the revocation
 decision to stand.
 
 
          ¶31
 Importantly, section 17-2-103(2)(b) states that the appeal is
 to the Board's appellate body. Like section
 17-2-201(9)(c), section 17-2-103(2)(b) makes no mention of
 alternatively seeking judicial review. Under
 Abdul-Rahman's reading, the discretion to seek judicial
 review instead of appealing to the Board's appellate body
 must be inferred. Yet there is no language in section
 17-2-103(2)(b) on which to base such an inference.
 
 
          ¶32
 Instead, reading section 17-2-103(2)(b) in harmony with the
 parallel language in section 17-2-201(9)(d) confirms that the
 legislature intended to provide the option to appeal the
 Board's revocation decision — but that, if pursued,
 the appeal must be to the Board's appellate body. Section
 17-2-201(9)(d) provides that "[t]he district attorney or
 the attorney general may appeal the [revocation]
 decision of a member of the [B]oard to two members of the
 [B]oard." (Emphasis added.) Under Abdul-Rahman's
 interpretation of "may appeal," this same phrase in
 section 17-2-201(9)(d) would mean the State would
 have the ability to seek
 
 16
 
 immediate judicial review in lieu of pursuing an
 administrative appeal. But the only type of permissible
 judicial review of a revocation decision is through a Crim.
 P. 35(c) (2)(VII) petition for postconviction relief,
 see § 17-2-201(4)(b), which the State may not
 pursue. See § 18-1-410(1) (describing
 "every person convicted of a crime" as those with
 the right to petition for postconviction review); Crim. P.
 35(c)(2) (same). Logically then, the phrase "may
 appeal" in section 17-2-201(9)(d) refers to the
 State's choice to appeal the decision at all. The
 identical phrase in section 17-2-103(2)(b) therefore should
 not be given a different meaning. ¶33 Abdul-Rahman also
 points to section 17-2-201(4)(b) to support his reading of
 section 17-2-103(2)(b). He contends that section
 17-2-201(4)(b) authorizes immediate judicial review of an
 initial revocation decision and exempts parole revocation
 hearings from the exhaustion requirement. We disagree.
 
 
          ¶34
 Section 17-2-201(4)(b) gives the Board the power to
 
 
 conduct hearings on parole revocations as required by section
 17-2-103. Such hearings shall be exempt from the requirements
 set forth in section 24-4-105, C.R.S. Judicial review of any
 revocation of parole shall be held pursuant to section
 18-1-410(1)(h), C.R.S.
 
 
          ¶35
 When read in harmony with the other relevant provisions, the
 phrase "[j]udicial review of any revocation of
 parole" simply circumscribes a court's authority to
 review parolees' claims of unlawful parole revocation
 under section 18-1-410(1)(h).
 
 17
 
          ¶36
 As previously discussed, both section 17-2-103(2)(b) and
 section 17-2-201(9)(c) allow a parolee to appeal to two
 members of the Board and prescribe the administrative review
 process that "shall" be followed. To interpret the
 phrase "[j]udicial review of any revocation of
 parole" in section 17-2-201(4)(b) to instead allow
 immediate judicial review would directly conflict with the
 process mandated in sections 17-2-103(2)(b) and
 17-2-201(9)(c). See People v. Steen, 2014 CO 9,
 ¶ 9, 318 P.3d 487, 490 ("Where possible, we
 interpret conflicting statutes in a manner that harmonizes
 the statutes . . . ." (quoting City of Florence v.
 Pepper, 145 P.3d 654, 657 (Colo. 2006))). Instead, we
 conclude that the language in section 17-2-201(4)(b)
 directing that "[j]udicial review of any revocation of
 parole shall be held pursuant to section 18-1-410(1)(h)"
 simply limits the type of relief a parolee may seek in court.
 
 
          ¶37
 Abdul-Rahman also contends that because section
 17-2-201(4)(b) exempts parole revocation hearings from the
 APA's hearing requirements, the General Assembly intended
 to excuse a parolee's duty to exhaust administrative
 remedies. We are not persuaded.
 
 
          ¶38
 Section 24-4-105 of the APA prescribes the process for most
 agency hearings and includes an administrative exhaustion
 requirement. See § 24-4-105(14)(c). Here, the
 exemption from the APA merely reflects that parole revocation
 hearings
 
 18
 
 must instead comply with the procedures in section 17-2-103,
 a requirement plainly stated in section 17-2-201(4)(b)
 itself.
 
 
          ¶39
 Section 17-2-103 describes requirements relating to notice,
 location, and other hearing procedures that afford a parolee
 due process and provide for the safety of those present at
 the hearing — all of which are specific to the parole
 context where the parolee may be in custody at the time of
 the hearing. The APA's hearing requirements do not
 account for this unique context. See §
 24-4-107, C.R.S. (2025) ("[W]here there is a conflict
 between [the APA's requirements] and a specific statutory
 provision relating to a specific agency, such specific
 statutory provision shall control as to such agency.");
 cf. McCallum v. Colo. State Bd. of Parole, 23 P.3d
 1226, 1228 (Colo.App. 2000) (holding that the procedures of
 the APA are inapplicable to section 17-2-201 because when the
 two are read together "they reveal a clear, unambiguous,
 and exclusive procedure for consideration of parole
 applications").
 
 
          ¶40
 And as already discussed, the revocation appeal process is
 set forth in section 17-2-201(9)(c) rather than in section
 24-4-105. If, as Abdul-Rahman argues, parolees have no duty
 to follow the procedures outlined in section 17-2-201(9)(c)
 because parole revocation hearings are not subject to an
 administrative appeal, then section 17-2-201(9)(c) and the
 Board's appellate body would be rendered nullities
 — every parolee could simply seek postconviction relief
 under section
 
 19
 
 18-1-410(1)(h) and Crim. P. 35(c)(2)(VII) instead of
 appealing first to the Board. But we must presume that by
 creating it, the General Assembly intended for the
 Board's appellate body to be used. See People v.
 Cooper, 27 P.3d 348, 354 (Colo. 2001) ("Our
 analysis of any part of a statute is based on the assumption
 that the General Assembly intended that the entire statute be
 effective."); § 2-4-201(1)(b), C.R.S. (2025)
 (same).
 
 
          ¶41
 Furthermore, exempting parole revocation hearings from the
 APA's hearing requirements does not automatically exempt
 parolees from the administrative exhaustion requirement
 — only from the APA's exhaustion requirement. The
 general rule requiring a party to seek available
 administrative relief from an agency's adverse decision
 before seeking judicial review long predates the 1959
 enactment of the APA and the 1993 addition of an express
 exhaustion requirement to section 24-4-105. Ch. 37, secs.
 1-7, §§ 3-16-1 to -7, 1959 Colo. Sess. Laws 158,
 158-66; Ch. 253, sec. 4, § 24-4-105(14), 1993 Colo.
 Sess. Laws 1325, 1329; see, e.g., First Nat'l Bank of
 Greeley v. Patterson, 176 P. 498, 501 (Colo. 1918)
 (observing that "any grievance which can be remedied by
 application to agencies specially invested with power to act
 in the premises" does not "call for" judicial
 intervention and concluding that the plaintiff
 "refrained from seeking [administrative] relief, and may
 not now complain"); Bordner v. Bd. of
 Comm'rs, 18 P.2d 323, 323 (Colo. 1932)
 ("Although the complaint alleges that the taxes were
 paid under protest, it
 
 20
 
 does not contain the indispensable allegation that any
 administrative remedy was invoked."); Hannum v.
 Hillyard, 278 P.2d 1015, 1017 (Colo. 1955) ("The
 doctrine of 'exhaustion of administrative remedies'
 is very clearly settled and without appreciable conflict. Our
 [c]ourt has many times been called upon to invoke this
 doctrine, which it has unhesitatingly done in so many cases
 that we now conclude and say that exhaustion of the
 administrative remedies is a judicial prerequisite to court
 action.").
 
 
          ¶42
 Finally, Abdul-Rahman contends that there are no overwhelming
 policy considerations that warrant an exhaustion requirement
 in the parole revocation context. We disagree. Requiring
 parolees to exhaust their administrative remedies gives
 deference to the Board's authority over parole revocation
 proceedings and advances the policy prerogatives underpinning
 the exhaustion doctrine.
 
 
          ¶43
 Requiring administrative exhaustion allows the Board to
 exercise its authority and subject matter expertise in an
 area requiring discretion. The nine Board members represent
 "multidisciplinary areas of expertise," including
 in law enforcement and offender supervision; each member must
 have at least five years of relevant experience; and each
 member must fulfill continuing education or training. §
 17-2-201(1)(a), (e). Because the Board's decision to
 revoke parole is highly fact-specific and must be made
 "in a manner that is in the best interests of
 
 21
 
 the defendant and the public," § 17-2-201(4.5),
 deference to the Board allows it to use its subject-matter
 expertise to review initial revocation decisions.
 
 
          ¶44
 Subject matter expertise also allows the Board to correct its
 own errors on appeal. This administrative appeal process both
 respects the Board's autonomy and advances judicial
 efficiency. Specifically, the Board's appellate body
 — two Board members who did not adjudicate the
 revocation complaint — may review the initial
 revocation decision for (1) irregularity that prevented a
 fair revocation hearing; (2) abuse of discretion or
 misconduct by the person who conducted the hearing; (3) an
 arbitrary and capricious revocation decision; (4) accident or
 surprise; (5) newly discovered evidence; (6) an error or
 change in law; or (7) discharge of a sentence. State Bd. of
 Parole, 8 Colo. Code Regs. 1511-1:14.00(E) (2013).
 Additionally, the Board may grant a new revocation hearing.
 Id. Thus, the Board's appellate review gives the
 Board an opportunity to correct another Board member's
 errors and may give a parolee the relief they seek, obviating
 any need for judicial review.
 
 
          ¶45
 Furthermore, requiring a parolee to appeal first to the
 Board's appellate body provides the parolee with more
 process in an expedited time frame and helps to ensure that
 the factual record will benefit a court if judicial review is
 sought. Unlike the uncertain timeline for postconviction
 review, which may take years (as was true in the present
 case), the Board's appellate body must render its
 decision
 
 22
 
 within twenty-five working days after a parolee files an
 appeal. § 17-2-201(9)(c). Thus, a parolee is ensured
 swift review, and if the decision is unsatisfactory, then the
 parolee may still seek judicial review under section
 18-1-410(1)(h) and Crim. P. 35(c)(2)(VII). And although the
 appellate body does not collect new evidence, its review of
 the initial hearing and decision enables it to compile a
 record that will aid judicial review. See §
 17-2-201(9)(c) (requiring that the Board's appellate body
 reduce its decision to writing).
 
 
          ¶46
 In sum, we conclude that administrative exhaustion of
 remedies is a jurisdictional prerequisite to judicial review
 in the parole revocation context.
 
 
          C.
 Application
 
 
          ¶47
 It is undisputed that Abdul-Rahman failed to exhaust his
 administrative remedies before seeking postconviction relief
 pursuant to section 18-1-410(1)(h) and Crim. P.
 35(c)(2)(VII). He does not contend that any exceptions to the
 exhaustion requirement apply to him. Therefore, because
 Abdul-Rahman was required to but did not exhaust his
 administrative remedies, the postconviction court lacked
 jurisdiction to consider his petition for postconviction
 relief.
 
 
          III.
 Conclusion
 
 
          ¶48
 In sum, we hold that a parolee appealing the Board's
 initial parole revocation decision must exhaust their
 administrative remedies before pursuing postconviction relief
 under section 18-1-410(1)(h) and Crim. P. 35(c). Because the
 
 23
 
 failure to do so deprives a court of jurisdiction over the
 matter, we vacate the decision of the court of appeals and
 remand the case with instructions to return it to the
 district court to dismiss for lack of jurisdiction.
 
 
          
 JUSTICE GABRIEL dissented.
 
 24
 
          
 JUSTICE GABRIEL, dissenting.
 
 
          ¶49
 The majority concludes that before appealing a revocation of
 parole, a defendant must first exhaust their administrative
 remedies. Maj. op. ¶¶ 2, 48. For two reasons,
 however, I do not believe that this question is properly
 before us in this case.
 
 
          ¶50
 First, the People concede that they did not raise this issue
 in the district court but rather raised it for the first time
 in their answer brief in the court of appeals. It is well
 settled, however, that, in general, issues raised for the
 first time on appeal are deemed waived. See Moses v.
 Diocese of Colo., 863 P.2d 310, 319 n.10 (Colo. 1993)
 ("We have consistently held, with few exceptions, issues
 not raised in the trial court cannot form the basis of an
 appeal."); Paine, Webber, Jackson &Curtis, Inc.
 v. Adams, 718 P.2d 508, 513 (Colo. 1986) (noting that,
 "[a]s a general rule, issues not presented in the trial
 court are deemed waived and cannot be raised on appeal,"
 but recognizing an exception to that rule for challenges to
 the trial court's subject matter jurisdiction).
 Accordingly, I would conclude that the People waived their
 exhaustion of administrative remedies argument here.
 
 
          ¶51
 I am not persuaded otherwise by the People's assertion,
 which the majority accepts, Maj. op. ¶ 10, that they
 were permitted to raise this issue for the first time on
 appeal because exhaustion of administrative remedies
 implicates a district court's subject matter
 jurisdiction. For the reasons set forth in my dissenting
 
 25
 
 opinion in Masterpiece Cakeshop, Inc. v. Scardina,
 2024 CO 67, ¶¶ 89-91, 556 P.3d 1238, 1255-56
 (Gabriel, J., dissenting), I do not believe that the question
 of exhaustion of administrative remedies presents an issue of
 subject matter jurisdiction, notwithstanding the fact that we
 have routinely but imprecisely used the word
 "jurisdiction" in this context in prior cases.
 See Maj. op. ¶ 12 (citing cases in which all
 but one that addressed exhaustion of administrative remedies
 referred to "jurisdiction" but not "subject
 matter jurisdiction"). The distinction matters because,
 although subject matter jurisdiction may not be waived or
 consented to by the parties, People v. Sprinkle,
 2021 CO 60, ¶ 17, 489 P.3d 1242, 1246, other
 "jurisdictional" issues, such as personal
 jurisdiction, may be waived, St. George v. Off. of State
 Pub. Def., 2026 COA 28, ¶ 12, __ P.3d __.
 
 
          ¶52
 Second, even if the People did not waive their exhaustion of
 administrative remedies argument, they won this case
 on the merits in the court of appeals below. I am unaware of
 any other case in which we have granted certiorari to rule
 that a party should have won on a different basis below, and
 I would not now set a precedent encouraging parties to seek
 certiorari review if they prefer to have won on different
 grounds. This is particularly true here, where the likely
 result of the majority's ruling is that Shams
 Abdul-Rahman will not prevail when he exhausts his
 administrative remedies on remand, the postconviction court
 will then reiterate its ruling on Abdul-Rahman's renewed
 Crim. P. 35(c) petition, and we
 
 26
 
 will end up exactly where we are today. Our resources are
 limited. Therefore, and as a matter of judicial restraint, I
 would have deferred consideration of the exhaustion of
 administrative remedies issue to a case in which it was
 properly and necessarily before us.
 
 
          ¶53
 For these reasons, I would dismiss this matter as
 improvidently granted. Accordingly, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following issue:
 
 
 Whether administrative exhaustion is required before a
 revoked parolee may seek judicial review of their parole
 revocation under Crim. P. 35(c).
 
 
 [2] Under section 18-1-410(1)(h), persons
 convicted of a crime may pursue postconviction review for an
 alleged "unlawful revocation of parole." Crim. P.
 35(c)(2)(VII), which provides for the same right, largely
 tracks section 18-1-410(1)(h). See Hunsaker v.
 People, 2021 CO 83, ¶¶ 18, 21, 500 P.3d 1110,
 1114-15; § 18-1-410(2)(a).
 
 
 ---------